BERTHA ADLERSHEIM, Respondent, v. FRANK SALZMAN, Appellant.

Judgment affirmed, with costs. Finch, P. J., O'Malley and Untermyer, JJ., concur (memorandum by Untermyer, J., stating ground for concurring in affirmance); Merrell and Martin, JJ., dissent and vote to reverse and dismiss the complaint; dissenting opinion by Martin, J.

UNTERMYER, J. (concurring). I concur in the affirmance of the judgment. Although I agree with Mr. Justice Martin that, the building not being a tenement house (*Silverman* v. *Ulrika Realty Corp.*, 239 App. Div. 194), the plaintiff was guilty of contributory negligence as matter of law, I consider that we are precluded as to this by the previous decision of this court reversing the order which dismissed the complaint upon that ground.

MARTIN, J. (dissenting). This is a personal injury action. The accident out of which it arose occurred in 1926 and an action was commenced the same year. The first trial, in 1930, resulted in a verdict for the plaintiff, which the court set aside and then dismissed the complaint, on the ground that there was clearly contributory negligence on the part of the plaintiff. This court (in 234 App. Div. 840) reversed the judgment of dismissal and ordered a new trial. The second trial resulted in a disagreement of the jury. The third trial resulted in a judgment for the plaintiff from which the defendant now appeals. The plaintiff and her husband, who has since died, were visiting the wife of the defendant at No. 1580 Fifty-seventh street, Brooklyn, N. Y. The premises, a two-family house, the upper floor of which was occupied by the defendant and his family, were owned by the defendant. While attempting to leave the premises by means of a stairway leading from the second floor to a vestibule, the plaintiff fell and sustained the injuries for which she now seeks damages. The stairway in question was used solely to reach or leave defendant's apartment. Several different versions of the accident have been given by the plaintiff. On the last trial she testified that at about six-thirty o'clock on the evening of January 10, 1926, she and her husband called at the home of the defendant to visit the latter's wife, who was ill. While there, a dispute arose between the defendant and his wife. When the plaintiff favored the defendant's wife, the defendant rebuked her and accompanied by her husband she decided to leave the apartment. As they left the bedroom they closed the door and found themselves in a dark hallway through which they proceeded toward the stairs where plaintiff says her foot caught on the carpet at the edge of the stairway and she fell and sustained the injuries complained of in this action. Part of the testimony of the plaintiff relating to the manner in which she fell is of such importance we here quote it. " Q. Were you walking slow, or fast, or how? A. Very slow. Then I turned to my husband and I asked him whether he had a match, and he said, ' I have none, and in the

meantime '— he said, ' In the meantime I am going to hold onto you ' (witness indicating). He put his hand on my body and he was holding onto me. Q. And then did you walk that way until you got to the top of the stairs? A. Then we were walking until we came to the edge of the stairway, and then at that time my heel of my right leg (indicating) got caught in a part of a torn carpet, and then I attempted to seize hold of something to prevent me from falling, and while in the act of doing that and trying to disengage my leg I fell. * * * The Witness: My heel of my foot got caught. I don't know whether it was a torn carpet or whether it was in any way disarranged or something was there, I don't know, but in attempting to disengage my foot I fell." On direct examination the plaintiff very clearly testified that she fell from the top of the stairs, in other words, from the hall or landing at the edge of the stairway and before she took a step to the one below the second floor. After there had been an overnight adjournment of this case the plaintiff was again called and immediately told the court that she had taken a step down from the hall or landing level and that she fell from that first step below the second floor level. The fact that she changed her story was so evident it was commented on by the court when he said, " That is entirely different from her story yesterday." At one of the previous trials of this action in which the verdict for plaintiff was set aside and also on the present trial the plaintiff said that she shut the door of the bedroom after she left it and then found herself in the dark. In other words, she came out of a lighted room and entered a dark hallway and as she testified on this trial, " I was groping my way ahead, holding onto the wall." It was evidently too dark to see the step. During the last trial, the entire case of the plaintiff rested, not on the theory of the carpet being torn, as testified to by the plaintiff but on the fact that there was a bulging of the carpet at one end caused by the presence underneath it of some pieces of paper, cardboard and cord which had been placed there. To sustain this contention, the plaintiff produced her daughter who testified that in response to a telephone call from one of defendant's daughters she called at the home of the defendant a few minutes after the accident. She testified that, with her father and the defendant, she looked at the stairs, and on the first step from the top saw that the carpet was " untacked " and there was a bulge caused by " rubbish, paper, newspaper, little sticks, and frayed edges of the carpet sticking there." She said it was " quite a bunch " and that it was shown to the defendant who then remarked that " I told them to clean that." This witness has told three different stories of the defective condition on the step in question. On the first trial she said she and her father found and extricated the paper, rubbish and other materials from under the carpet and that when the defendant came out he was shown what had been under the carpet. On the second trial she testified that when she was extracting the " stuff " from under the carpet the defendant " must have been in the hall;" the court pressed her for a definite statement and she said she did not remember where the defendant was. On this trial she definitely placed the defendant on the steps examining the carpet with the witness and her father. The defendant called as witnesses his wife, two daughters and a Mr. and Mrs. Pflaumenbaum who were related to both the plaintiff and the defendant. All these witnesses testified that there was no bulging of the carpet on the first step from the top; that the plaintiff's husband and her daughter did not examine the step after the accident and that the conversations alleged to

have been had between the defendant and members of his household never took place, particularly the alleged conversations relating to the taking from under the carpet of the materials which caused it to bulge. To show that the plaintiff had no clear idea of how she fell or what was the cause of her fall we quote part of the plaintiff's testimony on the second trial, as follows: " Q. Did you know you were coming to the stairs, Mrs. Adlersheim? A. I knew that I was coming to the steps. I held on with my hand to the wall until I reached the steps, and then I seized hold of the banister and I was about to make a step to go down when suddenly my foot caught something and I fell down. Q. On what step were you when you say your foot caught? A. It seems to me it was the first step, but it is so many years ago that I cannot recall. Maybe it was the second. I felt that I am falling. I was attempting to save myself but my heel caught. It twisted into something and that caused me to fall." It was stipulated on this trial that the plaintiff gave the following testimony on the first trial: " Q. And the room that you were in, in the bedroom you left, they had a light in there, did they? A. In the bedroom, yes, but I shut the door behind me. Q. And as you came out you shut the door behind you? A. Yes, I shut the door behind me and I found myself in the dark after that." The plaintiff has contradicted herself on several occasions in very material details describing how the accident occurred. It is clear that she did not know whether she fell from the first step or from the top of the stairs. Her own testimony shows that she left a lighted room, shut the door behind her and groped her way through a very dark hall without any care, even to the extent of opening the door which she had closed. She could not see where she was walking or any carpet or stairway. She was clearly guilty of contributory negligence. In *Hudson* v. *Church of Holy Trinity* (250 N. Y. 513) the court said: " Plaintiff's duty in the circumstances was to look out for herself and not to feel her way where it was ' so black and dark that she could not see anything.' She should have refrained from proceeding down the unlighted hallway in unfamiliar surroundings without finding out where she might safely go. She elected to feel her way along in the darkness. She was guilty of contributory negligence as a matter of law. (*Rohrbacher* v. *Gillig*, 203 N. Y. 413.) " (See, also, *Hilsenbeck* v. *Guhring*, 131 N. Y. 674; *Weller* v. *Consolidated Gas Co.*, 198 id. 98.) The verdict of the jury on the question of the defendant's negligence was against the overwhelming weight of the evidence. In addition, plaintiff's contributory negligence was established by her own testimony. The judgment should be reversed, and the complaint dismissed. Merrell, J., concurs.